UNITED STATES of America, Appellee,

v.

Charles D. PRICE, Appellant.

UNITED STATES of America, Appellee,

v.

Herman O. McMAHAN, Appellant.

Nos. 85–5040(L), 85–5041.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 8, 1985.

Decided April 14, 1986.

Coming B. Gibbs, Jr., Charleston, S.C.,
Anthony F. Gonzalez, Tampa, Fla., (Gibbs
& Holmes, Charleston, S.C., Samuel R.

Mandelbaum, Tampa, Fla., on brief), for appellants.

Dale L. DuTremble, Asst. U.S. Atty., Charleston, S.C., (Vinton D. Lide, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before WIDENER and PHILLIPS, Circuit Judges, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.

HILTON, District Judge:

In 1978, Herman McMahan was elected business manager of Local 601 of the International Iron Workers Union in Charleston, South Carolina. As business manager, McMahan's duties included representing the union to the public, negotiating contracts with contractors, and recruiting new members. During all times relevant to this case, Charles Price was the elected business and financial agent of Local 808 of the International Iron Workers Union in Orlando, Florida. As business agent, his duties and obligations substantially mirrored those of McMahan.

When McMahan was elected business manager, Local 601 was over $30,000 in debt to the International Union. By 1984, the financial situation of Local 601 had improved significantly; so much so, that the debt to the International Union was paid off in full and a new union hall was constructed.

The dramatic improvement in the financial well-being of Local 601 was due in part to McMahan signing up new members from outside of South Carolina. In 1981, opponents within the union alleged that these new members' credentials were not being properly examined prior to their admission to the union. As a result, the International sent an examiner to Local 601 to investigate these complaints. Union records show that the examiners did investigate the complaints and found no violations of union rules and none were reported by the examiner.

In February 1982, agent James Settle of the Federal Bureau of Investigation began to investigate the membership application process at Local 601. As a result of Settle's investigation, a Federal Grand Jury in Charleston, South Carolina, returned an indictment against, among others, Herman McMahan and Charles Price, appellants herein.

The indictment charged that McMahan, as business agent for Local 601, was responsible for certifying to the International Union that applicants were qualified and to insure the "proper use, preparation and transmittal of all the membership applications." It was alleged that the defendants engaged in a "scheme or artifice to defraud the union and its members of their right to McMahan's and Price's faithful and disinterested performance of official duties, free from corruption, partiality, dishonesty and fraud," in violation of 18 U.S.C. § 1341. It was further alleged that the defendants "embezzled and converted to their own use monies, properties and other assets of the local unions, that is, the Form 7 membership application, in exchange for sums ranging from $500 to $1,000, a portion of which they applied to their own benefit," in violation of 29 U.S.C. § 501(c). Lastly, the indictment charged the defendants with one count of conspiring to commit mail fraud and to embezzle union property in violation of 18 U.S.C. § 371.

The details of the scheme to defraud, as alleged in the indictment, were that Price would recommend certain workers for membership and would then obtain three blank money orders for payment of the alleged membership fees. These members would be recommended to Local 601 by Price and McMahan would approve the applications and in turn receive monies "over and above the fees set by the union." In furtherance of this scheme, the defendants caused a Form 7 membership application, for which they had received monies in excess of the set fees, to be delivered through the U.S. mails to the International. The embezzlement counts were premised on the allegation that the defendants embezzled and converted to their own use, the Form 7 application, in exchange for sums in excess

of the set fees, and that the excess was applied to their own use and benefit.

On August 23, 1984, the defendants were arraigned and entered pleas of not guilty to all charges. A motion to dismiss the indictment was filed on September 12, 1984, claiming that counts one through sixteen failed to charge the elements of mail fraud because there was no allegation of financial loss to the union. It was further stated that the indictment failed to properly allege the elements of the offense of embezzlement. These motions were denied.

A jury trial of this cause was held before Judge C. Weston Houck on October 19, 1984 through November 12, 1984. At the close of all the evidence, Judge Houck granted judgments of acquittal on three of the mail fraud counts and three of the embezzlement counts; eliminating six counts against McMahan and two against Price. Later, Judge Houck directed a verdict on an additional mail fraud count and an additional embezzlement count against Price alone.

The jury returned a verdict of guilty against McMahan on twenty-three counts and nineteen counts against Price. Both filed timely notices of appeal.

■ On appeal, the defendants raise numerous assignments of error. They first contend the District Court erred in not granting judgments of acquittal as to all counts in the indictment against McMahan and Price because the union investigator had previously found no violation. This finding, they assert, would serve as a bar to a subsequent federal criminal prosecution. We disagree.

Criminal laws are not passed by the legislature solely for the benefit of individual citizens or individual organizations but for the good of the public as a whole. Only a duly appointed or elected prosecutor representing the public is empowered to decide whether to bring charges in a particular case. Additionally, one of the purposes of the Landrum-Griffin Act, of which 29 U.S.C. § 501(c) is a part, was "to expose conflicts of interests and to stamp out embezzlement and self dealing by union officials." *McNamara v. Johnston*, 522 F.2d 1157, 1163 (7th Cir.1975). Were federal prosecutors to be barred from indicting and prosecuting union officials for such conduct by a finding of no violation by a union investigator, the intent of the Landrum-Griffin Act would be undermined. Enforcement of criminal statutes cannot depend upon the outcome of internal investigations by autonomous labor unions. Therefore, we find no error in the district court's denial of judgments of acquittal based upon the union's finding of no violation.

Appellants next contend that the trial judge erred in denying their motion for judgment of acquittal on the mail fraud counts because a financial loss and detriment to the union was neither alleged nor proven.

The indictment alleged that Price and McMahan devised a scheme to defraud the union of their "faithful and honest services." This allegation, they claim, is deficient because the government, to support a conviction under 18 U.S.C. § 1341, must prove economic loss or injury to the union as an essential element of the crime of mail fraud.

In *United States v. McNeive*, 536 F.2d 1245 (8th Cir.1976), the court noted that:

... In interpreting the language of the mail fraud statute, courts have identified numerous types of schemes that are violative of the statute. These various schemes fall broadly into two categories.

The first category, which comprises the bulk of mail fraud cases, includes the many deceptive schemes which are intended to defraud individuals of money or other tangible property interests. There can be little dispute that these schemes are within the scope of § 1341 since they involve calculated efforts to use misrepresentations and other deceptive practices to induce the innocent or unwary to give up some tangible interest...

The second category of § 1341 deceptive schemes is comprised of those which

operate to deprive individuals of intangible rights or interests... This expansive interpretation was deemed justified since limiting § 1341 to deprivations of tangible interests alone would weaken the efficacy of the statute by excluding from its scope the multifarious schemes which deprive innocent victims of significant, often constitutionally protected, intangible rights.

536 F.2d at 1248, 1249. Cited with approval in *United States v. Mandel*, 591 F.2d 1347, 1361 (4th Cir.1979), conviction aff'd in relevant part, 602 F.2d 663 (4th Cir.1979) (en banc), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

■ It is clear that intangible rights may be the target of a scheme to defraud under 18 U.S.C. § 1341. In *Mandel*, Marvin Mandel, Governor of the State of Maryland, and others, were indicted for mail fraud and racketeering. The mail fraud counts charged that the defendants had devised a scheme and artifice "to defraud the citizens of the State of Maryland, and its governmental departments, agencies, officials and employees, both executive and legislative, of their right to the conscientious, loyal, faithful, disinterested and unbiased services, actions and performance of official duties of Marvin Mandel, in his official capacities as Governor of the State of Maryland." *Mandel* at 1353. This court noted in *Mandel* that "at this late date, there can be no real contention that many schemes to defraud a state and its citizens of intangible rights, e.g., honest and faithful government, may not fall within the purview of the mail fraud statute." *Mandel* at 1362. *See also, United States v. Barber*, 668 F.2d 778 (4th Cir.1982), cert. denied 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982), *United States v. Shamy*, 656 F.2d 951 (4th Cir.1981) cert. denied 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1981).

An elected union official who owes the union members and the public in general faithful and honest services should not be treated any differently, nor held to any different standard. In such a case economic injury need not be shown because the harm caused "lies in the fact that the public official is not exercising his independent judgment in passing on official matters." *Mandel* at 1392. Thus, the union and its members were not receiving what they were entitled to, that is the honest and faithful services of their officials in the exercise of their official duties. It is in this way that the union was defrauded in this case, and because the mails were used in furtherance of that scheme, we affirm the convictions under 18 U.S.C. § 1341.

■ Appellants next contend that the trial judge erred in admitting government's exhibit number 10 in evidence because it was not properly authenticated.

Government exhibit 10 consisted of two notes which read as follows:

Herman, each man, three months dues, $300 each book. Rest for you.

Thanks.

Charlie Price

Herman, give each man three months dues, rest is for you.

Thanks.

Charles or Charlie.

The exhibit also contains several pages of photocopies of checks and money orders from Local 601 members. Some of these checks and money orders were deposited into McMahan's bank account.

Rule 901(a) of the Federal Rules of Evidence states that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims."

■ "The sufficiency of a showing of authenticity of a document sought to be introduced into evidence is a matter residing in the sound discretion of the trial judge." *United States v. Sutton*, 426 F.2d 1202, 1207 (D.C.Cir.1969). In this case, much testimony was given that corroborated the contents of the two notes. Individuals named in the indictment had paid fees in excess of the set fee of $300. Those who paid more than the set fee were

members of Local 601 in Charleston. Price spoke with several men as to the means by which one could become a member of the union, and the fees discussed were always in excess of the set fee. Also, blank money orders were always utilized.

Thus, the record is replete with testimony that would support a finding by the trial judge that the matter in question is what the proponent claims. The trial judge listened to all the government's evidence before admitting exhibit number 10 and we find no abuse of discretion in the trial judge's decision to admit that exhibit.

■ Lastly, appellants allege that the trial court erred in denying their motions for judgment of acquittal on the embezzlements counts. They claim there was no evidence to show that the Form 7 membership applications were the property of the union and no evidence to show that any forms were used without union authorization.

29 U.S.C. § 501(c) provides:

Any person who embezzles, steals or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000.00 or imprisoned for not more than five years or both.

To establish a violation of this section the government must prove that the defendants embezzled or converted to their own or another's use, the funds or property of a labor union. *United States v. Gibson*, 675 F.2d. 825 (6th Cir.1982), *United States v. Dibrizzi*, 393 F.2d 642 (2nd Cir.1968). The indictment, in this case, alleged that the appellants did "embezzle property and other assets of the union, to-wit: Form 7, in exchange for sums ranging from $500 to $1,000, a portion of which they applied to their use and benefit." The evidence reveals that Price referred persons to McMa-han for membership in Local 601. As a part of the membership process, the applicant filled out a Form 7 membership application. The application was returned along with the normal fee of $300.00 to the union. In addition to the $300.00 fee to the union, additional sums were assessed with each application; this excess was split between Price and McMahan. None of the union funds were taken or used by the appellants but were paid over to the union as required. Nor were any Form 7 applications taken or used by the appellants for any purpose other than taking applications for membership which were forwarded on to the union. There was no evidence that the forms were altered or falsified in any manner.

Congress, in enacting 29 U.S.C. § 501(c), created a federal crime yet the terms used in the legislation retain their common law meaning. *Woxberg, v. United States*, 329 F.2d 284, 290 (9th Cir.1964). The Supreme Court in *Moore v. United States*, 160 U.S. 268, 270, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895), defined embezzlement as "the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come."

In this case there was no evidence of taking of application forms, or converting of application forms for the use of the appellants. The forms were used for the exact purpose for which they were intended. Applicants for membership in local 601 filled out the forms, as required by the union, and they were forwarded to the union in due course. There was no evidence that any of the forms were taken by the appellants or used by the appellants for any purpose other than receiving applications. There was no evidence that the forms were altered or falsified. The fact that the appellants received a fee for themselves in addition to that required by the union does not change the fact that the form was properly used. Nor does the taking of a fee create an appropriation of

an application which was used for its intended purpose in the union's business.

The government argues that the holding in *United States v. Robinson,* 512 F.2d 491 (2nd Cir.1975) must control our decision. In *Robinson,* the defendant was an elected union official who acted as a liaison between seamen aboard ships in port and the shore-based union officers. His particular responsibility was to handle the processing of seamen into groups to be offered priority jobs. The government's proof established that Robinson returned six forms which contained false entries of seamen's sea service. The government's theory was that Robinson, aided and abetted by others, did in fact convert to his own use and personal profit the Group I application forms which were property of the union. The court upheld the conviction citing *United States v. Silverman,* 430 F.2d 106 (1970) which held that in enacting 29 U.S.C. § 501(c) Congress had gone beyond the common law offense of larceny and the statutory crime of embezzlement.

Indeed 29 U.S.C. § 501(c) goes beyond common law larceny and statutory embezzlement by adding the language "and willfully abstracts or converts to his own use" any union property. In *Robinson,* the defendant falsified and misused union forms. He forged the forms in contravention of union procedures to obtain moneys and in doing so converted them to his own use and personal benefit.

In this case there is no evidence of any converting to their own use by either appellant. There were no false or fraudulent applications. There was no evidence that the forms were taken or converted to any use other than the use called for by the union. There was no embezzlement of the forms as charged in the indictment. The offense in this case was the receiving of additional fees in connection with a proper application procedure, but not embezzlement as charged under 29 U.S.C. § 501(c). Those counts must therefore be dismissed.

AFFIRMED IN PART; REVERSED IN PART.