**UNITED STATES of America**

v.

**Marvin MANDEL, W. Dale Hess, Harry W. Rodgers, III, William A. Rodgers, Irvin Kovens, and Ernest N. Cory.**

**Criminal No. S 75–0822.**

United States District Court, D. Maryland.

Nov. 12, 1987.

---

Breckinridge L. Willcox, U.S. Atty., Martin S. Himeles, Asst. U.S. Atty., Baltimore, Md., for plaintiff U.S.

Arnold M. Weiner, M. Albert Figinski, Stuart R. Berger, Melnicove, Kaufman, Weiner, Smouse & Garbis, Baltimore, Md., for defendant Mandel.

William G. Hundley, Larry S. Gondelman, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for defendant Hess.

Thomas C. Green, Washington, D.C., for defendants Rodgers.

William F. Gately, H. Thomas Howell, Semmes, Bowen & Semmes, Baltimore, Md., for defendant Kovens.

Ernest N. Cory, Galesville, Md., pro se.

## MEMORANDUM

SMALKIN, District Judge.

### I.

Messrs. Marvin Mandel, W. Dale Hess, Harry W. Rodgers, III, William A. Rodgers, Irvin Kovens, and Ernest N. Cory have filed petitions for writs of error *coram nobis* to vacate judgments of conviction and sentence entered against them, and for other and further relief. On October 7, 1977, this Court (Hon. Robert L. Taylor (now deceased), United States District Judge for the Eastern District of Tennessee, sitting by designation) specifically entered judgment of guilt against Mr. Mandel as to counts 1–4, 7–13, 15–18, and 21 of the indictment and against Messrs. Hess, H. Rodgers, W. Rodgers, Kovens, and Cory as to counts 1–4, 7–13, 15–18, and 24 of the indictment. Counts 1–4, 7–13, and 15–18 of the indictment charged all of the petitioners with mail fraud, in violation of 18 U.S. C. § 1341. Count 21 charged Mr. Mandel with criminal violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, by engaging in a pattern of racketeering activity through 20 acts of mail fraud (charged as separate offenses in counts 1–20) and two acts of bribery in violation of Maryland law. *See* 18 U.S.C. § 1961(1). Count 24 charged the other petitioners herein with criminal violation of RICO, premised solely on the 20 acts of mail fraud set out in counts 1–20. Petitioners now argue that their convictions should be vacated in view of the recent decision in *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), wherein the Supreme Court interpreted the federal mail fraud statute as not making punishable schemes to defraud citizens of the intangible right to honest and impartial state government. Petitioners seek the remedy of an extraordinary writ of error *coram nobis,* stating that no other remedy remains available to them.

### II.

The writ of error *coram nobis* developed at common law "[t]o relieve litigants from judicial wrongs for which there was no remedy...." Annotation, *Writ of Error Coram Nobis,* 38 A.L.R.Fed. 617, 622 (1978). There was some doubt as to whether this ancient writ remained available when 28 U.S.C. § 2255 was enacted in 1948. 3 C. Wright, *Federal Practice and Procedure: Criminal* § 592, at 428 (1982). Just prior to the enactment of § 2255, there was an amendment to Federal Rule of Civil Procedure 60(b) that seemed to have abolished writs of error *coram nobis. Id.* at 428–29. "But in 1954 'the ancient writ of error coram nobis rose phoenix-like from the ashes of American jurisprudence through the benign intervention of the Supreme Court' in *United States v. Morgan* [346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954)]." *Id.* at 429 (quoting *United States v. Balistrieri,* 606 F.2d 216, 219 (7th Cir.1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980).

In *United States v. Morgan,* 346 U.S. at 506, 74 S.Ct. at 250, the Supreme Court made clear that a federal district court is empowered to issue a writ or error *coram nobis,* pursuant to the All-Writs Act, 28 U.S.C. § 1651(a).[1] Justice Reed, writing for the Court, cautioned, however, that "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy [of writ of error *coram nobis* ] only under circum-

---

1. Section 1651(a) provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

stances compelling such action to achieve justice." *Id.* at 511, 74 S.Ct. at 252. Quite simply, an error "of the most fundamental character" must have occurred, and no other remedy may be available. *Id.* at 512, 74 S.Ct. at 253. Where a petitioner has fully served his prison term for a felony conviction, a writ of error *coram nobis* may issue because, "[a]lthough the term has been served, the results of the conviction may persist." *Id.* "Subsequent convictions may carry heavier penalties, [sic] civil rights may be affected." *Id.* at 512–13, 74 S.Ct. at 253.[2]

The Second Circuit has found that the limited remedy of *coram nobis* was available in light of a dispositive change in federal law. *See United States v. Travers*, 514 F.2d 1171 (2d Cir.1974). Mr. Travers originally had been convicted of 20 counts of mail fraud and one count of conspiracy to commit mail fraud. Judge Friendly, writing for the Court on the *coram nobis* appeal, explained the facts underlying the original conviction as follows:

> The conspiracy proved at trial was to produce, sell, and distribute counterfeit Diners' Club credit cards. While Travers was present on some occasions when a counterfeit card was used and once even requested use by another of such a card for his benefit, the substantive counts were based on use of the counterfeit cards by a co-conspirator, Pucci, for which Travers could be found guilty under the doctrine of *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The mailings were for the purpose of collecting for goods or services already obtained by use of the counterfeit cards.

*Id.* at 1172. The Second Circuit affirmed Mr. Travers' conviction on direct appeal, rejecting a contention that "the mailings subsequent to use of the cards were not related to the scheme sufficiently to come within the mail fraud statutes...." *Id.* After the Second Circuit's decision on the direct appeal, the Supreme Court accepted a like contention in the case of *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974). In reliance on the *Maze* case, Mr. Travers, who had fully served his sentence, "petitioned the district court for a writ of error *coram nobis*, requesting that his conviction be vacated and his record expunged." The district court dismissed the petition, stating that Mr. Travers had asserted no adverse legal consequences. *Id.* The Second Circuit ultimately held that, even though Mr. Travers had fully served his sentence, he was entitled to a writ of error *coram nobis* in that he was "convicted and punished for an act that the law does not make criminal." *Id.* at 1176. It is the contention of petitioners that they, too, are entitled to a writ of error *coram nobis*, in that they were "convicted and punished for an act that the law does not make criminal." *See, e.g.,* Paper # 630, at 33. The Government, implicitly acknowledging that conviction for conduct that is not criminal may be grounds for issuance of a writ of error *coram nobis*, merely retorts that "the conduct for which defendants were indicted and convicted constitutes mail fraud, even under a post-*McNally* interpretation of the mail fraud statute." Paper # 640, at 20.

The question now before this Court on petitioners' motions is whether circumstances compelling an extraordinary writ of error *coram nobis* (like the circumstances in the *Travers* case) are present here. An in-depth review of the procedural history of this case as well as of the newly-emergent

---

**2.** At this juncture, the Court notes that, through a writ of error *coram nobis*, it may not only vacate a conviction, but it may also order repayment of any fines received by the Government in connection with said conviction. *See United States v. Bluso*, 519 F.2d 473, 475 (4th Cir.1975) (Where defendant's guilty plea was founded upon a constitutional defect, judgment of conviction was vacated, indictment dismissed, and Government ordered to repay portion of fine that it had received.); *DeCecco v. United States*, 485 F.2d 372, 373–74 (1st Cir.1973) (By way of a *coram nobis* proceeding, the Court vacated defendant's unconstitutional conviction under the Wagering Tax statute and ordered repayment of fine paid pursuant to judgment of conviction under said statute.). The Government, indeed, has stipulated that "vacating the criminal convictions would result in restitution of any criminal fines in connection therewith...." Paper # 640, at 56 n. 19.

case law on the federal mail fraud statute (predominately *McNally*), therefore, is in order.

### III.

On November 24, 1975, a Special Grand Jury for the District of Maryland returned a twenty-four count indictment charging petitioners with violations of 18 U.S.C. § 1341, *i.e.*, the federal mail fraud statute, and 18 U.S.C. § 1961 *et seq.*, *i.e.*, RICO. Specifically, Messrs. Mandel, Hess, H. Rodgers, W. Rodgers, Kovens, and Cory were charged with mail fraud in each of the first 20 counts of the indictment; in counts 21 and 22, Mr. Mandel was charged with RICO violations, based on the 20 alleged violations of the mail fraud statute and two alleged violations of the Maryland bribery statute (Md.Ann.Code art. 27, § 23 (1957)); in count 23, Messrs. Hess, H. Rodgers, and W. Rodgers were charged with a RICO violation, based on 20 alleged violations of the mail fraud statute and two alleged violations of the Maryland bribery statute; and, in count 24, Messrs. Hess, H. Rodgers, W. Rodgers, Kovens, and Cory were charged with a RICO violation based solely on 20 alleged violations of the mail fraud statute.

Count 1 (paragraph 13) of the indictment sets forth the gist of the alleged scheme to defraud with which petitioners herein were charged:

Beginning at some point between the 7th day of January, 1969, and the spring of 1971, and continuing thereafter to the date of the filing of this Indictment, in the State and District of Maryland and elsewhere,

MARVIN MANDEL

W. DALE HESS

HARRY W. RODGERS, III

WILLIAM A. RODGERS

IRVIN KOVENS

and

ERNEST N. CORY

the defendants herein, devised and intended to devise a scheme and artifice:

(a) To defraud the citizens of the State of Maryland, and its governmental departments, agencies, officials and employees, both executive and legislative, of their right to the conscientious, loyal, faithful, disinterested and unbiased services, actions and performance of official duties by MARVIN MANDEL, in his official capacities as Governor of the State of Maryland, free from bribery, corruption, partiality, willful omission, bias, dishonesty, deceit, official misconduct and fraud;

(b) To defraud the citizens of the State of Maryland, and its governmental departments, agencies, officials and employees, both executive and legislative, of their right to have the state's business and its affairs conducted honestly, impartially, free from bribery, corruption, bias, dishonesty, deceit, official misconduct and fraud, and in accordance with the laws and Code of Ethics of the State of Maryland;

(c) To defraud the citizens of the State of Maryland, and its governmental departments, agencies, officials and employees, both executive and legislative, of their right to have available and to be made aware of all relevant and pertinent facts and circumstances when:

(1) drafting, considering and deliberating upon proposed legislation for the State of Maryland with respect to the Maryland horse racing industry and to other matters;

(2) administering the laws of the State of Maryland with respect to the Maryland horse racing industry and to other matters; and

(3) transacting business for and on behalf of the State of Maryland;

(d) To obtain, directly and indirectly money, property and other things of value, by means of false and fraudulent pretenses, representations, and promises, and the concealment of material facts, relating to the Marlboro Race Track, the Bowie Race Track, the Security Investment Company, Ray's Point, Inc., and to other matters.

Counts 2–20, having incorporated by reference the above-quoted allegations of count 1, charged petitioners herein with particular mailings in the execution of the alleged scheme and artifice to defraud. As previously noted, each of the RICO counts was based in whole or in part on alleged acts of mail fraud.[3]

The reach of the federal mail fraud statute as relied upon in count 1 has been consistently challenged by petitioners at various stages of the proceeding.

In November, 1975, petitioners (then defendants) moved to dismiss the indictment, "arguing, *inter alia,* that the indictment fails to allege a cognizable scheme to defraud...." *United States v. Mandel,* 415 F.Supp. 997, 1003 (D.Md.1976). They specifically argued that "the indictment fails to allege a scheme to defraud because (1) the facts alleged in the indictment reveal no intentional use of false or fraudulent representations by any of the defendants and (2) the intangible rights allegedly defrauded by the scheme do not constitute 'something of value' whose deprivation can be punished under the mail fraud statute." *Id.* at 1005–06. Judge Murray first found that it was evident that the indictment alleged the intentional use of fraudulent representations by the defendants. *Id.* at 1010. He next found that the indictment alleged a scheme to defraud within the meaning of the mail fraud statute, *id.* at 1015, stating:

The mail fraud statute makes unlawful the use of the mails in execution of *"any* scheme or artifice to defraud, *or* for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1341 (emphasis added). A logical interpretation of that language is that Congress, by expressly limiting the second clause to money or property, did not limit "any scheme or artifice to defraud" to those which contemplated the gaining of money or property, and courts have so construed it. *See, e.g., United States v. States,* 488 F.2d 761, 764 (8th Cir.1973),

*cert. denied,* 417 U.S. 909, 94 S.Ct. 2605, 41 L.Ed.2d 212 (1974).

*Id.* at 1010. This matter thus proceeded to trial on June 1, 1977.

On August 9, 1977, Judge Taylor instructed the jury. The pertinent part of the mail fraud charge was as follows:

The words scheme or artifice, as used in the mail fraud statute, mean any plan or course of action intended to defraud others, *or* to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

A statement or representation is false or fraudulent within the meaning of this statute if known to be untrue or made with reckless indifference as to its truth or falsity, and made or caused to be made with the intent to deceive.

A false or fraudulent representation may be made by statements or half-truths, or the concealment of material facts, as well as by affirmative statements or acts.

The mail fraud statute prohibits any scheme utilizing the mails that is reasonably calculated to deceive persons of ordinary prudence and comprehension.

A scheme to defraud, within the meaning of the statute, may be defined as the intentional use of false or fraudulent representations for the purpose of gaining a valuable undue advantage or working some injury to something of value held by another.

*A citizen's right to have his Government conducted honestly and impartially, and to the faithful and loyal services of public officials, are things of value whose fraudulent deprivation may fall within the meaning of scheme to defraud as used in the mail fraud statute.*

*Additionally, a scheme to defraud public officials of information material to a decision which they are required to make in their official capacity may also come within the meaning of scheme to defraud as used in the mail fraud statute.*

Transcript at 11488–89 (emphasis added). The Court declined to give the following

---

3. Count 22 was dismissed prior to trial and need not be further discussed here.

jury instruction as to mail fraud requested by defendants, and exception was duly taken (Tr. 11562):

> The words "scheme" and "artifice", as used in the mail fraud statute, include any plan or course of action intended to deceive others, and to obtain, by false or fraudulent pretenses, representations, or promises *money or property* from persons so deceived.

> It is an essential element of the offense of mail fraud that the defendant intend to inflict *some definable pecuniary, financial, or economic harm* upon the persons or class of persons alleged in the indictment to be victims of the scheme. *In the present case, therefore, unless you find, beyond a reasonable doubt, that the Defendant Mandel intended to inflict some definable pecuniary, financial, or economic harm upon the citizens of the State of Maryland, through the acts which he is alleged to have committed or intended, you must find him not guilty.*

Paper # 631, Exhibit D (emphasis added).

The Court's instructions as to "pattern of racketeering activity" in connection with counts 21, 23, and 24, the criminal RICO counts, also merit reproduction. With respect to count 21, the Court instructed that the Government must prove that Mr. Mandel "acquired or maintained such interest in or control of said enterprise through a pattern of racketeering activities; that is through two or more acts constituting bribery under Maryland law *or* mail fraud under Federal law ... occurring within ten years of each other and connected by a common plan, scheme or motive." Transcript at 11508 (emphasis added). The Court gave the identical instruction (except that it was tailored to Messrs. Hess, H. Rodgers, and W. Rodgers) with respect to count 23. With respect to count 24 (implicating Messrs. Hess, H. Rodgers, W. Rodgers, Kovens, and Cory), the Court instructed that the Government must prove that the individual defendants "in the course of such association or employment conducted or participated in the conduct of the affairs of said enterprise through a pattern of racketeering activities; that is through two or more acts constituting mail fraud ... occurring within ten years of each other and connected by a common plan, scheme, or motive." Transcript at 11510.

After a dozen days of deliberation, the jury returned its verdict. Mr. Mandel was convicted on counts 1–4, 7–13, and 15–18 alleging mail fraud and count 21 alleging RICO based on mail fraud or bribery. Messrs. Hess, H. Rodgers, W. Rodgers, Kovens, and Cory were convicted on the aforementioned mail fraud counts and count 24 alleging RICO premised solely on mail fraud.[4]

Petitioners promptly appealed their convictions. Petitioners first contended that their prosecution and conviction under the mail fraud statute constituted an unwarranted extension of that statute and an impermissible federal untrusion into the political affairs of the State of Maryland. *United States v. Mandel*, 591 F.2d 1347, 1357 (4th Cir.), *vacated*, 602 F.2d 653 (4th Cir.) (en banc), *second reh. en banc denied*, 609 F.2d 1076 (4th Cir.1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). The Fourth Circuit panel opinion reported in 591 F.2d held that "the claim that prosecution under § 1341 constitutes an impermissible federal intrusion into the political affairs of the State of Maryland and thus violates principles of federalism is without merit," *id.* at 1358, and that "[the] contention that their convictions were based on an unwarranted overextension of the mail fraud statute is likewise without merit." *Id.* at 1359. Petitioners further contended that the jury was inadequately charged by the Court on the mail fraud counts. *Id.* at 1364. They specifically "attack[ed] the district court's failure to give a bribery instruction in connection with the

---

**4.** The jury had found Messrs. Hess, H. Rodgers, and W. Rodgers guilty, additionally, as to count 23 alleging RICO through mail fraud or bribery. The Court, however, entered a judgment of acquittal on that count, finding that the RICO statute requires some involvement in the operation or management of an enterprise and that the Government's evidence had not met this requirement.

mail fraud counts as well as the failure to give an instruction relating to Governor Mandel's knowledge of the ownership of Marlboro." *Id.* at 1364–65. The majority of the Fourth Circuit panel, *viz.*, Judges Widener and Russell, agreed that the district court's instructions were not adequate. *Id.* at 1365–66. The majority additionally held that certain evidence was admitted improperly. *Id.* at 1367–71. Judge Butzner dissented on all grounds that the majority thought constituted reversible error. *Id.* at 1377–87. The judgments of conviction as to the mail fraud counts thus were vacated, as were the judgments of conviction as to the remaining racketeering counts (counts 21 and 24), given that "they depend[ed] in whole or in part upon the mail fraud convictions." *Id.* at 1376. The Fourth Circuit, in the same opinion, affirmed the judgment of acquittal on count 23. *Id.* at 1374–76.

On June 5, 1979, the Fourth Circuit reheard the matter *en banc. United States v. Mandel*, 602 F.2d 653 (4th Cir.1979) (*per curiam*). The resulting opinion, in its entirety, follows:

> The judgments of conviction are affirmed by an equally divided court.
>
> A majority of the members of the *en banc* court would affirm the judgments of conviction against all of the contentions of the appellants except the claim of error in the charge to the jury which was the point upon which there was equal division.

*Id.* Judge Widener dissented, writing, in relevant part, that:

> The prosecution rests on fragmented circumstances, many of the more essential ones being no more than mere rumor and legislative corridor gossip. In such a case, is not a defendant entitled to precise instructions? What was done here was, however, more likely to confuse and mislead than to provide clear guidance for the jury. And that should entitle the defendants to a new trial. The error is not insubstantial; it is fundamental....
>
> The additional remarks that I have made as to the sufficiency of the jury instructions should be read in light of the fact that *the panel opinion carried the mail fraud statute near its outer limits, and some cases may arguably indicate beyond....*

*Id.* at 655–56 (Widener, J., dissenting) (emphasis added).

Messrs. Mandel *et al.* filed a petition for writ of *certiorari* to the Supreme Court of the United States, which was denied. *Mandel v. United States*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

In the intervening years since last they were before this Court, petitioners have served their prison sentences. Mr. Mandel served 19 months of his four-year sentence, the remainder being commuted. He was disbarred by this Court on July 9, 1980, and by the Court of Appeals of Maryland on October 28, 1982, because of his federal convictions. Mr. Hess served 18 months of his three-year term of imprisonment, the remainder having been commuted, and he paid a total of $40,000 in fines. Messrs. H. and W. Rodgers each served their terms of imprisonment, three years and one year and a day, respectively, and they each paid $40,000 in fines. Mr. Kovens served his three-year term of imprisonment and paid a total of $40,000 in fines. Mr. Cory's 18 month term of imprisonment was suspended.

IV.

Within this calendar year, the Supreme Court narrowed the scope of the federal mail fraud statute as it had been interpreted theretofore by the inferior federal courts. The case is *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The pertinent facts were as follows: Gray, a former Kentucky official, and McNally, a private individual, were charged with one count of conspiracy and seven counts of mail fraud, six of which were dismissed before trial. The remaining mail fraud count alleged that Gray and McNally had devised a scheme "(1) to defraud the citizens and government of Kentucky of their right to have the Commonwealth's affairs conducted honestly, and (2) to obtain, directly and indirectly, money and other things of value by means

of false pretenses and the concealment of material facts." *Id.* 107 S.Ct. at 2878. The conspiracy count alleged that Gray and McNally had "(1) conspired to violate the mail fraud statute through the scheme just described and (2) conspired to defraud the United States by obstructing the collection of federal taxes." *Id.*

After informing the jury of the essence of the remaining counts, the District Court instructed the jury that the alleged scheme or artifice to defraud the citizens of Kentucky and to obtain money by false pretenses could be made out by either of two sets of findings:

> (1) that Hunt had *de facto* control over the award of the workmen's compensation insurance contract to Wombwell from 1975 to 1979; that he directed payments of commissions from this contract to Seton, an entity in which he had an ownership interest, without disclosing that interest to persons in state government whose actions or deliberations could have been affected by the disclosure; and that petitioners, or either of them, aided and abetted Hunt in the scheme; or (2) that Gray, in either of his appointed positions, had supervisory authority regarding the Commonwealth's workmen's compensation insurance at a time when Seton received commissions; that Gray had an ownership interest in Seton and did not disclose whose actions or deliberations could have been affected by that disclosure; and that McNally aided and abetted Gray (the latter finding going only to McNally's guilt).

*Id.* at 2879. The jury was not instructed that "the Commonwealth itself was defrauded of any money or property;" or that "in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance;" or that "to convict it must find that the Commonwealth was deprived of control over how its money was spent." [5] *Id.* at 2882. The jury convicted Gray and McNally on both the conspiracy count and the remaining mail fraud count. *Id.* at 2879. The Sixth Circuit subsequently affirmed, relying on a line of decisions, exemplified by *United States v. Mandel,* holding that the mail fraud statute proscribes schemes to defraud citizens of their intangible rights to honest and impartial government. *Id.* The Supreme Court reversed the Sixth Circuit, holding that the jury charge permitted a conviction for conduct outside the reach of the mail fraud statute, 18 U.S.C. § 1341. *Id.* at 2882. The Court further held that, because the substantive mail fraud convictions were reversed, the conspiracy convictions should also be reversed. *Id.* Justice White, writing for the Court, began his discussion by stating that, "[t]he mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." *Id.* at 2879. Justice White explained that, "[i]nsofar as the sparse legislative history reveals anything, it indicates that the original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money and property." *Id.* He then addressed the case law interpreting § 1341, stating that *Durland v. United States,* 161 U.S. 306, 16 S.Ct. 508,

---

5. As pointed out in a footnote to the majority opinion, it additionally was not charged that requiring the Wombwell agency to share commissions violated state law. The Court stated that it therefore should not assume that said requirement was illegal under state law. The Court continued that "[f]or the same reason we should assume that it was not illegal under state law for Hunt and Gray to own one of the agencies sharing in the commissions and hence to profit from the arrangement, whether or not they disclosed it to others in state government." The concluding paragraph of this footnote, which is obviously *dicta,* reads:

> It may well be that Congress could criminalize using the mails to further a state officer's efforts to profit from governmental decisions he is empowered to make or over which he has some supervisory authority, even if there is no state law proscribing his profiteering or even if state law expressly authorized it. But if state law expressly permitted or did not forbid a state officer such as Gray to have an ownership interest in an insurance agency handling the State's insurance, it would take a much clearer indication than the mail fraud statute evidences to convince us that having and concealing such an interest defrauds the State and is forbidden under federal law.

*Id.* at 2882 n. 9.

40 L.Ed. 709 (1896), "the first case in which this Court construed the meaning of the phrase 'any scheme or artifice to defraud,' held that the phrase is to be interpreted broadly insofar as property rights are concerned, but did not indicate that the statute had a more extensive reach." *Id.* 107 S.Ct. at 2879–80. According to Justice White, "Congress codified the holding of *Durland* in 1909, and in doing so gave further indication that the statute's purpose is protecting property rights." *Id.* at 2880. Justice White ultimately concluded for the Court that, "[r]ather than construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials, we read § 1341 as limited in scope to the protection of property rights." *Id.* at 2881.

In reliance on its holding in *McNally*, the Supreme Court recently vacated another judgment of conviction for mail fraud based on intangible rights. *McMahan v. United States*, — U.S. —, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987), *vacating United States v. Price*, 788 F.2d 234 (4th Cir. 1986). In the *Price* case, the Fourth Circuit had held that the allegations in an indictment (and evidence in support thereof) "that [defendant union officials] devised a scheme to defraud the union of their 'faithful and honest services,'" and that the mails were used in furtherance of the scheme were sufficient to support defendants' mail fraud convictions. *Price*, 788 F.2d at 236–37.

The various circuit courts of appeal have begun to change their prior interpretations of the mail fraud statute in view of *McNally* and *McMahan*. *See, e.g., United States v. Gimbel*, 830 F.2d 621, 626 (7th Cir.1987) (The Seventh Circuit reversed Gimbel's conviction for mail and wire fraud where the indictment underlying the conviction mere-

ly stated that "the 'scheme' consisted of depriving the Treasury Department of Currency Transaction Reports and of other 'accurate and truthful information and data.'").

■ Based on *McNally* and its progeny, it is indisputably settled that the federal mail fraud statute does not now make criminal, nor has it ever made criminal, the use of the mails in furtherance of schemes or artifices to defraud persons of non-property rights.[6] Because the Supreme Court was interpreting the statute in light of its legislative history and intent, obviously static properties of the statute, the reach of the statute has logically been as narrow as *McNally*'s interpretation since the day of its enactment. *See* Part VI, *post.*

## V.

It is entirely settled that there is no federal common law of crimes. That is, criminal conduct does not offend against the federal government unless it violates an Act of Congress. *See, e.g., Jerome v. United States*, 318 U.S. 101, 104, 63 S.Ct. 483, 485, 87 L.Ed. 640 (1943); *United States v. Pardee*, 368 F.2d 368, 374 (4th Cir.1966). "One may be subjected to punishment for crime in the federal courts only for the commission or omission of an act defined by statute, or by regulation having legislative authority, and then only if punishment is authorized by Congress." *Viereck v. United States*, 318 U.S. 236, 241, 63 S.Ct. 561, 563, 87 L.Ed. 734 (1943) (citing, *e.g., United States v. Standard Brewery, Inc.*, 251 U.S. 210, 219–20, 40 S.Ct. 139, 141, 64 L.Ed. 229 (1920); *United States v. George*, 228 U.S. 14, 20–22, 33 S.Ct. 412, 414–15, 57 L.Ed. 712 (1913); *Williamson v. United States*, 207 U.S. 425, 453–62, 28 S.Ct. 163, 173–77, 52 L.Ed. 278 (1908)). The federal judiciary therefore "may not create crimes outright or enlarge the reach of enacted crimes." *United States v. Best*,

---

**6.** Contrary to the Government's position in apparent reliance on *McNally's* footnote 9, *McNally* does not stand for the limited proposition that "a scheme to deprive a state solely of intangible rights, such as the right to have its affairs conducted honestly *that does not violate state law* falls outside the scope of the mail fraud statute."

Paper # 640, at 1–2 (emphasis added). Nothing in footnote 9 so limits the *McNally* holding. The Court merely observed in that footnote that no violation of state law was charged or would be assumed, and speculated as to what Congress may, but has not yet, criminalized.

573 F.2d 1095, 1101 (9th Cir.1978) (citing *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249–50, 96 L.Ed. 288 (1952)). As the Supreme Court stated in *Viereck*, 318 U.S. at 243, 63 S.Ct. at 564, "[t]he unambiguous words of a statute which imposes criminal penalties are not to be altered by judicial construction so as to punish one not otherwise within its reach, however deserving his conduct may seem." In plain English, if petitioners' conduct was not prohibited by § 1341, it was not a federal crime.

## VI.

Petitioners have recognized that a question might arise "as to the degree of retroactivity to be attached to the *McNally* decision." Paper # 631, at 31. Based on *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), and its progeny, they argue that *McNally* should be given full retroactive effect so as to permit this collateral attack on their convictions. *See, e.g.*, Paper # 631, at 31–33; Paper # 633, at 21–25. The Government opposes petitioners' argument, stating that, "[w]hatever the retroactivity of *McNally* as a general matter, this Court should not apply it retroactively in the narrow circumstances of this case, where the conduct charged and proven [sic] violated the mail fraud statute, the jury instructions followed a universal interpretation of the mail fraud statute before *McNally*, and defendants long ago completed service of their sentences." Paper # 640, at 41.

■ In this Court's view, petitioners and the Government alike address not one, but two distinct, yet interrelated, issues, *viz.*, the general availability of collateral relief to address a change in the law and the specific retroactive effect to be given *McNally* in this case. The following discussion relates to the first issue. The Supreme Court held in *Davis*, 417 U.S. at 341–42, 94 S.Ct. at 2302–03, that a conviction may be collaterally attacked, by way of a 28 U.S.C. § 2255 motion, if a non-constitutional change in the law has been made since trial and appeal. The logic of the *Davis* opinion applies with equal force

to petitions for writ of error *coram nobis* based on non-constitutional changes in the law after trial and appeal. *See United States v. Travers*, 514 F.2d 1171, 1173 n. 1 (2d Cir.1974) ("Although the Davis case arose under 28 U.S.C. § 2255 the standards applied in federal *coram nobis* are similar."); *cf.* 3 C. Wright, *Federal Practice and Procedure: Criminal* § 592, at 433 (Habeas corpus rules are highly persuasive in deciding how *coram nobis* proceedings should be conducted.).

■ With the question of the propriety of seeking *coram nobis* relief based on a non-constitutional change in the law decided, the focus next becomes whether *McNally* is to be applied retroactively to this case. There is persuasive authority to the effect that a Supreme Court decision construing the mail fraud statute as not reaching a particular scheme to defraud is fully retroactive. *See Strauss v. United States*, 516 F.2d 980 (7th Cir.1975) (habeas corpus); *United States v. Travers*, 514 F.2d 1171 (2nd Cir.1974) (writ of error *coram nobis*). The backdrop to these cases was the Supreme Court's decision in *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), that § 1341, the mail fraud statute, does not reach certain credit card schemes to defraud. The courts deciding both the *Strauss* and *Travers* cases permitted collateral attack on pre-*Maze* mail fraud convictions in light of *Maze*. They explained, quite simply, that "Section 1341 [the mail fraud statute] has always had the meaning given it by the Supreme Court in *Maze*." *Strauss v. United States*, 516 F.2d at 983 (citing *United States v. Travers*, 514 F.2d at 1174 n. 4). Judge Friendly, writing for the Second Circuit in *Travers*, addressed the argument the Government made there, and also makes here, that a Supreme Court decision is merely an overruling one where it changes "the law of the circuit," stating:

Reliance on the quoted expression of rather recent vintage, which is only a shorthand way of saying that the views of the court of appeals on an issue of federal law may remain undisturbed for a long time, can lead to dangerously wrong results. There are not eleven omni-presences of federal law brooding

over various portions of the United States. In the long run there is only one although some time may be needed to reveal it.

*United States v. Travers,* 514 F.2d at 1174 n. 4.

Interestingly, these two appellate decisions retroactively applying a Supreme Court decision construing the mail fraud statute do not discuss whether or how long ago defendants' sentences had been served before collateral relief was sought.

The Supreme Court expressly held in *McNally* that § 1341, the mail fraud statute, has been limited from its inception to the protection of money and property (rather than non-monetary, *i.e.,* "honest and faithful government") rights. *McNally v. United States,* 107 S.Ct. 2875 *passim. McNally* is *not* an overruling decision, despite "law of the circuit" to the effect that § 1341, the mail fraud statute, protects both tangible and intangible rights. *Cf. United States v. Travers,* 514 F.2d at 1174 n. 4. Retroactive application of *McNally,* therefore, is required.[7]

### VII.

### A.

█ Given the recent, retroactive decision in *McNally v. United States,* together with the nonexistence of any federal common law of crimes, it is clear that intangible rights to good and honest government may *not* be the target of a criminal scheme to defraud under the federal mail fraud statute, 18 U.S.C. § 1341. It is similarly clear that the jury charge in *Mandel* permitted conviction for mail fraud premised on a deprivation of intangible rights, *i.e.,* the right of a state's citizens to honest and faithful government, explicitly disapproved in *McNally,* and the right of public officials to receive accurate information material to a decision, implicitly disapproved in *McNally.* The charge given here did not *require* for conviction that the United States prove that the citizens of Maryland or its public officials suffered any economic loss or injury as a result of petitioners' conduct. Indeed, Judge Taylor *declined* to give a requested instruction that would have required that the Government prove loss of money or property by the citizens flowing from petitioners' "scheme to defraud," just as the trial judge in *McNally* had denied such an instruction.[8] Petitioners thus were convicted of using the mails to defraud citizens and public officials of intangible, non-monetary rights—conduct which has never been made criminal by federal stat-

---

**7.** In the context of a § 2255 proceeding, the Southern District of New York has held that *McNally* applies retroactively, requiring the setting aside of proscribed mail fraud convictions. *Ingber v. Enzor,* 664 F.Supp. 814, 823 (S.D.N.Y. 1987). When presented with a petition for writ of error *coram nobis* to vacate the mail fraud convictions filed in reliance on *McNally,* the Eastern District of Pennsylvania (per Senior Judge Van Artsdalen) wrote in *dictum* that "[n]othing in *McNally* suggests that its doctrine should be made applicable to final judgments." *United States v. Osser,* No. 72–384, slip op. at 8 (E.D.Pa. Oct. 7, 1987) [Available on WESTLAW, DCT database]. Judge Van Artsdalen, at one point, characterized *McNally* as "overturning a long and consistent line of lower court decisions...." *Id.* at 4. This Court finds itself in agreement with the views of the Southern District of New York rather than the Eastern District of Pennsylvania on this point, especially because the latter court's statement was *dictum.*

**8.** In a summarizing instruction on mail fraud, Judge Taylor used conjunctive language linking the theories of deprivation of good government

and material information to the obtaining "directly and [sic] indirectly, [of] money, property, and other things of value by means of false and fraudulent pretenses, representations and promises and the concealment of material facts relating to the Marlboro and Bowie Race Tracks, Security Investment Company, [and] Ray's Point, Inc....." Tr. 11552–53. Applying the well-settled principle that instructions must be viewed as a whole, rather than in isolated sentences, *see, e.g., United States v. Lopez,* 611 F.2d 44, 47 (4th Cir.1979), this isolated sentence does not alter the fact that the instructions as a whole permitted mail fraud convictions to be entered without a finding that any person was deprived of a property right. The mere fact that the schemers would eventually obtain profits from their scheme does not establish that they ever intended to deprive someone else of that person's property. One can profit either at, or not at, the expense of others. It is only the former that is prohibited in the mail fraud context by *McNally,* and the instruction excerpt quoted above did not make this crucial distinction, either standing alone or in context with the other instructions.

ute. This Court, then, has no choice but to grant a writ of error *coram nobis* that, at the very least, vacates the mail fraud convictions of Messrs. Mandel, Hess, H. Rodgers, W. Rodgers, Kovens, and Cory. Whether the RICO convictions under counts 21 and 24 of the indictment also must be vacated by the writ remains to be addressed.

## B.

It is clear that if convictions for all of the predicate offenses underlying a substantive RICO count are vacated, then conviction for the substantive RICO count also must be vacated. *See United States v. Truglio*, 731 F.2d 1123, 1132 (4th Cir.1984). It additionally appears to be the case that, if conviction for even *one* of the predicate offenses underlying a substantive RICO count is vacated, the substantive RICO count must be vacated. *See United States v. Joseph*, 781 F.2d 549, 554 (6th Cir.1986). In the *Joseph* case, the Sixth Circuit reversed a conviction for attempting to collect extensions of credit by extortionate means, *one* of the offenses relied on in convicting defendant of a substantive RICO violation; it then felt compelled to reverse the substantive RICO conviction. *Id.* The aforementioned RICO conviction apparently could not stand because a "pattern of racketeering activity" was lacking. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); *see also International Data Bank, Ltd. [IDB] v. Zepkin*, 812 F.2d 149 (4th Cir.1987).

■ Count 24, as noted throughout, charges all petitioners save Mr. Mandel with criminal violation of RICO premised solely on predicate offenses of mail fraud. Because none of the predicate offenses underlying this substantive RICO offense remains viable in the wake of *McNally*, the requisite "pattern of racketeering activity" necessarily is lacking. The Court, in granting the writ of error *coram nobis*, therefore additionally will vacate the RICO convictions of Messrs. Hess, H. Rodgers, W. Rodgers, Kovens, and Cory.

■ The only question remaining is whether Mr. Mandel's conviction for criminal violation of RICO, premised not only on the 20 counts of mail fraud but also on two alleged acts of bribery in violation of Maryland law, similarly must be set aside. Because there was no punishable mail fraud, the requisite RICO "pattern of racketeering activity" obviously could not be established by the alleged acts of mail fraud or a combination of any one or more of these acts with one or both of the acts of bribery. That is, for the RICO conviction to stand, the "pattern of racketeering activity" requirement must have been satisfied exclusively and independently by the two alleged violations of the Maryland bribery statute outlined in the indictment and explained to the jury. The pertinent part of the indictment reads as follows:

> (1) that on or about January 1, 1972, MARVIN MANDEL, while Governor of the State of Maryland, did receive from W. Dale Hess, Harry W. Rodgers, III, and William A. Rodgers a financial interest of substantial value in the Security Investment Company as a bribe, fee and reward for the purpose of influencing him in the performance of his official duties and for neglecting and railing [sic] to perform the same; and

> (2) that on or about December 6, 1971, MARVIN MANDEL, while Governor of the State of Maryland, did receive from W. Dale Hess, Harry W. Rodgers, III, and William A. Rodgers a 15% interest in certain assets later formally acquired by Ray's Point, Inc. as a bribe, fee and reward for the purpose of influencing him in the performance of his official duties, and for neglecting and failing to perform the same.

Indictment, Count 21, at ¶ 4(b).

Receipt of these two alleged bribes, *i.e.*, a financial interest in the Security Investment Company and a 15% interest in assets later acquired by Ray's Point, Inc., both within less than a two-month period, arguably does not show the "continuity plus relationship" characteristic of a "pattern of racketeering activity"—an essential element of a RICO violation. *See Sedima; IDB.*

■ Even if the two alleged bribes satisfied the RICO "pattern" requirement, the Court could not allow Mr. Mandel's conviction for criminal violation under count 21 of the indictment to stand. In the oft-cited decision of *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931), the Supreme Court vacated a conviction for violation of a statute condemning display of a red flag in a public place or a meeting place (1) "as a sign, symbol or emblem of opposition to organized government" or (2) "as an invitation or stimulus to anarchistic action" or (3) "as an aid to propaganda that is of a seditious character." Justice Hughes, writing for the Court, explained that:

> The verdict against the appellant was a general one. It did not specify the ground upon which it rested. As there were three purposes set forth in the statute, and the jury [was] instructed that [its] verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause.... It follows that instead of its being permissible to hold ... that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld.

*Id.* at 367–68, 51 S.Ct. at 535. The Seventh Circuit has reasoned therefrom that the fact that one of the alternative bases for a conviction is merely legally invalid (rather than constitutionally invalid as in *Stromberg* itself) also requires setting aside the conviction. *Cramer v. Fahner*, 683 F.2d 1376, 1379–80 (7th Cir.), *cert. denied*, 459 U.S. 1016, 103 S.Ct. 376, 74 L.Ed.2d 509 (1982). Senior Judge Hoffman wrote that, "[w]here a verdict is supportable on one ground but not on another, and it is impossible to tell which grounds the jury selected, the conviction is unconstitutional." *Id.* at 1379–80 (citing *Stromberg*). The Fourth Circuit has expressed its agreement with the above-quoted proposition, stating: "[w]here the jury considered alternate theories of liability, we must reverse the convictions if either theory is an improper basis for punishment." *United States v. Mallas*, 762 F.2d 361, 363 n. 3 (4th Cir. 1985). As noted, the 20 counts of mail fraud listed alternatively with two acts of bribery as predicate offenses for Mr. Mandel's substantive RICO offense cannot be deemed federal offenses. Therefore, they are not RICO predicate offenses. It is impossible to determine from the general verdict which of the predicate offenses were found by the jury to constitute the requisite "pattern of racketeering activity" underlying Mr. Mandel's RICO conviction. *See* Note, *United States v. Mandel: The Mail Fraud and En Banc Procedural Issues*, 40 Md.L.Rev. 550, 552 n. 11 (1981). Consequently, the RICO conviction of petitioner Mandel cannot stand.

## VIII.

■ The Government premises its opposition to these petitions chiefly on its contention that the evidence at trial showed that petitioners engaged in bribery,[9] in violation of Maryland law, and that this bribery deprived the State of something of value, in two ways. First, the State was deprived of the bribe money that Mandel received, which belonged to the State under a constructive trust-type theory. *See* Paper # 640, at 29 (citing, *e.g.*, *United States v. Kearns*, 595 F.2d 729, 733–34 (D.C.Cir. 1978); *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978).[10] Second, the State

---

9. An additional argument made by the Government, *i.e.*, that it charged and proved that petitioners' scheme to defraud violated the Maryland bribery statute and that this *alone* constituted mail fraud, is totally without merit. All of the essential elements of mail fraud must be proved. Proof of bribery alone does not satisfy this requirement.

10. The Court notes an important point about the cases referred to by the Government in support of its constructive trust argument. The cases

was deprived of racing days that "belonged to the people" as a whole. *See id.* at 34. Thus, the Government argues, *McNally's* requirement of showing a scheme to deprive the victim of property was adequately made out by the evidence at trial.

The problems with the Government's view of the matter are as follows.[11] First, there is substantial doubt that the Maryland law, or the general law of *quid pro quo*, relating to bribery was ever adequately laid before the jury in relation to the mail fraud counts or otherwise. This doubt is evident from the panel opinion of the Fourth Circuit reversing the conviction and from the equal division of the first *en banc* panel on this point.[12] Second, the jury was never instructed on the constructive trust theory *or* on the racing-days-as-items-of-value theory, and no party treated these theories as part of the prosecution's case at trial or on appeal. Third, and most important, the jury was instructed under a theory, which *McNally* clearly shows never has been within the reach of the mail fraud statute, that allowed a conviction if the jurors simply became convinced that the defendants had subverted the process of honest government in Maryland. The evidence of concealment of ownership of Marlboro shares and of Mandel's secret financial arrangements certainly showed that something fishy, and perhaps dishonest, involving Maryland's governor and some of those personally and politically closest to him was going on. Mandel might well

have been bribed. His co-defendants might well have bribed him. But, however strong the evidence of dishonesty or bribery, the jury was told it could convict for something that did not amount to a federal crime.

Finally, even accepting the view that the evidence of dishonesty was strong, it must be remembered that it took the jury a dozen days of deliberation to convict, and it took three appellate opinions (without even an explanation of why the convictions should stand) before these convictions became final. In these circumstances, and in light of *McNally*, the interests of justice favor the grant of the relief sought.[13]

IX.

The result, then, is that writs of error *coram nobis* will be issued separately, vacating all of petitioners' convictions.

X.

Finally, it must be remembered that this Court's action on these petitions has nothing to do with the petitioners' guilt or innocence, in any moral sense. The people of Maryland, as a matter of natural law, have and have always had an inalienable right to good government. A jury of twelve citizens found beyond a reasonable doubt that the petitioners had deprived all the citizens of Maryland of that right. This conduct, however, for reasons amply set forth above, cannot sustain a judgment

cited involved direct proof of the deprivation of property element of mail fraud by use of the constructive trust theory. In *Kearns,* for example, the Government brought a civil action for breach of fiduciary duty against the former president of the Export–Import Bank of the United States (Eximbank) to recover profits from sale of his personal stock holdings to a company having extensive dealings with Eximbank.

**11.** The Court notes that the petitioners' rebuttal characterization of the Government's present view as yet another "flip-flop" in its theory of prosecution has substantial merit. *See United States v. Mandel,* 602 F.2d at 655. Furthermore, a good argument can be made that it is inequitable to allow the Government to revert to a bribery theory now, its prosecutors having conducted themselves at trial in a way that disavowed a bribery theory as relevant to mail

fraud, thereby putting all their mail fraud eggs in the "good government" basket. *See* Tr. 1524; 10869; 11256–57; 11382–83.

**12.** The Fourth Circuit's *en banc* affirmance has been the subject of both scholarly and lay criticism. *See* Note, *United States v. Mandel: The Mail Fraud and En Banc Procedural Issues,* 40 Md.L.Rev. 550 (1981); B. Jacobs, *Thimbleriggers,* Chapter 13 (1984).

**13.** Given that petitioners herein repeatedly objected to the unwarranted extension of the mail fraud statute at trial and on appeal, this case is clearly distinguishable from *United States v. Osser,* No. 72–384 (E.D.Pa. Oct. 7, 1987) wherein Senior Judge Van Artsdalen denied a petition for writ of error *coram nobis* on the basis that the petitioner had not preserved a *McNally* point of objection.

that the defendants were guilty of federal crimes. A final answer to the question of petitioners' guilt or innocence, in any broader sense than that, must await the judgment of history.

## XI.

For the reasons stated, an Order will be entered separately, granting to petitioners writs of error *coram nobis* and setting aside the convictions and adjudications of guilt of all petitioners. The Government shall be required to repay any fines paid by the petitioners, within 90 days of the date hereof.