NATIONAL BASKETBALL
ASSOCIATION, Plaintiff,

v.

NATIONAL ASSOCIATION OF BAS-
KETBALL REFEREES; Jack Madden,
Michael F. Mathis, Jim Capers, Wally
Rooney, and William Saar, individually
and as members of the Executive Board
of the National Association of Basket-
ball Referees; Richard G. Phillips; and
Gettler & Katz, Defendants.

No. 84 Civ. 2017 (WCC).

United States District Court,
S.D. New York.

Oct. 31, 1985.

Proskauer Rose Goetz & Mendelsohn, New York City, for plaintiff; Michael A. Cardozo, of counsel.

Solotoff & Spivak, Great Neck, N.Y., for defendant Jack Madden; Joel Spivak, Kenneth Meiselas, of counsel.

Richard H. Markowitz, New York City, for defendants Michael F. Mathis, Jim Capers, Wally Rooney and William Saar; Gettler & Katz, Cincinnati, Ohio, of counsel.

Sprague, Levinson & Thall, Philadelphia, Pa., for defendant Richard G. Phillips; Sheldon Albert, Stephen R. Basser, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

The National Basketball Association ("the NBA") brought this interpleader action under the Federal Interpleader Act, 28 U.S.C. §§ 1335, 1397, 2361 (1982), after receiving conflicting instructions from officers of the National Association of Basketball Referees ("NABR" or "the union"), a labor union that represents the referees who officiate NBA games, as to the disposition of certain union funds. In a collective bargaining agreement dated December 8, 1983 the members of the NABR authorized the NBA to deduct from their paychecks "check-off" dues monies and remit them to the union. Defendant Jack Madden, the Executive Director of the union and a member of the five-person Executive Board, claimed that as Executive Director he had the exclusive power under the union's constitution and by-laws to control all of the union's business affairs, including the disposition of these check-off dues. He

**674**

instructed defendant Richard G. Phillips, Esq., counsel for the union, to advise the NBA to deposit the check-off monies with the Provident National Bank in Philadelphia, Pennsylvania. Defendants Michael Mathis, Jim Capers, Wally Rooney, and William Saar, the other four members of the Executive Board, claimed that control of the union's affairs properly rested in a majority of the Executive Board. They instructed the NBA to continue to withhold the monies, but not to send them to the Provident National Bank. Instead, they requested that the NBA simply hold the funds until a new bank account could be opened.

On May 8, 1984, Judge Sprizzo of this Court issued a temporary restraining order directing the NBA to deposit into the Registry of the Court all of the check-off dues monies it currently held pursuant to the December 8, 1983 collective bargaining agreement, and all check-off monies it might subsequently collect under that agreement. Thereafter, all of the parties to this litigation agreed to extend the temporary restraining order while awaiting disposition of a lawsuit captioned *Madden v. National Association of Basketball Referees* pending before Judge Joseph P. Braig in the Court of Common Pleas of Philadelphia County, Pennsylvania. Accordingly, the NBA has deposited and continues to depost the check-off monies with the Registry of this Court; the Registry currently holds approximately $98,000.

The Pennsylvania state court litigation apparently has not yet been resolved. Nonetheless, defendants Mathis, Capers, Rooney, and Saar have moved this Court for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on the ground that the dispute pending here is moot. This action is clearly not moot since there is still a live controversy as to who is entitled to control the check-off dues monies, but, for the reasons stated below, I agree that this matter is ripe for summary judgment and the motion is granted.

*Background*

The following facts appear to be uncontroverted. On August 10, 1984, defendant Rooney, on behalf of himself, Mathis, Saar, and Capers, wrote to all of the members of the union and proposed the adoption of a new constitution and by-laws at the union's annual meeting in September. *See* Affidavit of William Oakes in Support of Motion for Summary Judgment ¶ 5 [hereinafter cited as "Oakes Aff."]. The proposed constitution provided, among other things, that control of the union's business affairs would rest in a majority of the Executive Board and not with the Executive Director. *Id.*, Exh. C ¶ 6.1. The proposed constitution also provided that upon its adoption, elections would immediately be held to choose a new Executive Board and Executive Director. *Id.*, Exh. C ¶¶ 14.1, 14.2.

The union took up the issue of the proposed constitution at its meeting on September 26, 1984. Oakes Aff. ¶ 10. All members were invited to attend, and all did attend with the exception of Madden and two other referees.[1] *Id.* After discussion and amendments, the members voted on the proposed constitution by secret ballot. *Id.* ¶ 12. More than two-thirds of the members voted in favor of it, and the constitution was declared adopted. *Id.*

In accordance with the terms of the newly adopted constitution, the union held an immediate election to choose a new Executive Board and Executive Director. *Id.* ¶ 14. Nominations were made, and the membership cast secret ballots. *Id.* Hugh Evans and defendants Rooney, Saar, and Capers, were elected to the Executive

---

1. In a statement submitted pursuant to Rule 3(g) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, Madden states that he "was prevented from participating in the September 1984 meeting and was denied a meaningful opportunity to be heard." Defendant Madden's Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried ¶ 3. Madden has not, however, submitted any affidavit or other admissible evidence to support this allegation as required by Rule 56(e), Fed.R.Civ.P. Since he has not controverted the moving defendants' sworn statements, they are deemed admitted.

Board. *Id.* ¶ 15. Defendant Mathis was elected Executive Director. *Id.* Defendant Madden was not re-elected.

The newly constituted Executive Board then held a meeting, selected a treasurer, and directed the treasurer to open a bank account in the union's name in New York City into which all union funds would henceforth be deposited. *Id.* ¶¶ 17–18. The Court has been advised that such an account has been opened. *Id.* ¶ 18.

The moving defendants contend that these events render this lawsuit moot because the adoption of the new constitution made it clear that the power to control the union's business affairs rests with a majority of the Executive Board and not with the Executive Director. Accordingly, they maintain that they are entitled to summary judgment and request that all check-off dues monies be transferred to the union's new bank account.

Defendant Madden does not dispute that the new constitution vests the power to control the union's business affairs in a majority of the Executive Board, but he argues that the motion for summary judgment should be denied because (1) by taking the actions described above, the moving defendants improperly attempted to divest this Court of jurisdiction over this lawsuit; (2) under certain orders entered by Judge Braig in *Madden v. National Association of Basketball Referees,* the moving defendants lack the legal capacity to make this application for summary judgment; and (3) the election discharging Madden as Executive Director was illegal because it was contrary to his four-year term of office and in violation of § 401 of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 481(h), (i) (1982). I address each of these contentions below.

*Discussion*

It is well-settled that " 'on a motion for summary judgment, the court cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d

Cir.1975) ). The court of appeals has stated that " 'the key is issue-finding, not issue-resolution.' " *Id.* (quoting *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor,"* 691 F.2d 603, 606 (2d Cir.1982) ). Thus, summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.; *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444 (2d Cir.1980).

Applying these familiar principles to the instant motion, I conclude that there are no issues of material fact that preclude a grant of summary judgment in this case. As I noted above, Madden has not controverted the facts set out above, but he does argue that they do not entitle the moving defendants to judgment as a matter of law. For the reasons below, I find his arguments to be without merit.

■ I turn first to Madden's contention that, by taking the actions described above, the moving defendants have improperly attempted to strip the Court of jurisdiction to decide this dispute. Despite Madden's urgings, it is clear that the moving defendants did nothing improper by proposing the adoption of a new union constitution. Indeed, from all appearances, it would seem that they were pursuing their legitimate rights as union members to participate in the governance of the union. Of course, I have no doubt that one of their aims was to remove Madden from his position as Executive Director, but nothing in the orders of this Court prohibited them from doing so.

Moreover, the actions of the moving defendants have not in any way divested the Court of jurisdiction to decide this case. Indeed, the fact that the moving parties have requested that the Court grant them summary judgment is a tacit acknowledgement that the Court continues to have the power to determine who should take con-

trol of the check-off monies. The moving defendants simply contend that the recent amendment to the constitution removes all question that the Executive Board is the group to whom I should give this control. The fact that the issues in this case have become clearer does not mean that the Court has been stripped of jurisdiction; it just means that my task has become easier.

Madden's second argument is that in view of certain orders issued by Judge Joseph P. Braig in *Madden v. National Association of Basketball Referees,* the moving defendants lack the legal capacity to make this application for summary judgment. In that suit, Madden and other members of the NABR challenged the validity of a union meeting at which a majority of the membership voted to terminate defendant Phillips' employment as union counsel. On May 3, 1984, Judge Braig issued an order declaring the meeting illegal because it was not conducted in accordance with the union's constitution and by-laws; he ruled that since the meeting was illegal, the vote taken was invalid as well.

In a memorandum accompanying his order, Judge Braig stated that if the membership were to remove Phillips as counsel to the union, it would breach Phillips' retainer agreement, bankrupt the union, and make each of the members personally liable for Phillips' damages. In view of these drastic consequences, Judge Braig decided to appoint an overseer to conduct another meeting at which the effects of terminating Phillips' relationship with the union could be explained to the members, and they could again vote on whether to discharge Phillips as counsel to the NABR.

On April 5, 1984, Judge Braig issued a preliminary injunction enjoining the union from terminating Phillips as General Counsel for the NABR, apparently to enable the overseer to conduct a meeting with the union membership and hold another vote. The next day, Judge Braig supplemented his order, providing "that ... Phillips is at least until further order of this court *EX-CLUSIVE* counsel—except for proceedings directly related to the instant litigation." (emphasis in original). Judge Braig apparently has not modified or rescinded this order.

■ Madden contends that in view of Judge Braig's order that Phillips is, at least for now, exclusive counsel for the union, the moving defendants in this action are without the legal capacity to move for summary judgment in this case. Madden has not articulated why this is so, but presumably he believes that the moving defendants are in violation of Judge Braig's order because they employed counsel other than Phillips to represent them in this action. The theory appears to be that the union and its officials are powerless to take any legal action unless Phillips acts as their attorney.

I find little merit in this novel argument for a variety of reasons. First, I seriously doubt that Judge Braig intended his order to preclude the union or its officers from protecting their interests in a lawsuit such as this where the issues presented are unrelated to the question of whether Phillips can or should be terminated as the union's counsel. Second, even if Judge Braig's order were read to prohibit the moving defendants from employing counsel other than Phillips to represent them in this suit, Phillips could not do so since he is a co-defendant and has an obvious conflict of interest with the moving defendants. Thus, if the moving defendants were not permitted to engage another attorney to represent them, they would lose the benefit of counsel altogether. This Court, of course, could not tolerate such a result. Finally, if Madden believed that Judge Braig intended such unlikely results, the appropriate remedy for this alleged violation of Judge Braig's order was to petition the Court of Common Pleas for an order of contempt. Madden has had plenty of time to seek such an order, and he has not done so. Accordingly, I see no reason why I should adopt the strained interpretation of Judge Braig's order that Madden offers here.

■ Thus, I turn to Madden's final argument—that summary judgment is inappro-

priate because his discharge as Executive Director was contrary to his four-year term of office and in direct violation of § 401 of LMRDA, 29 U.S.C. § 481(h), (i) (1982). Section 481(h) of title 29 provides as follows:

If the Secretary [of Labor], upon application of any member of a local labor organization, finds after hearing in accordance with subchapter II of chapter 5, of Title 5 [the Administrative Procedure Act] that the constitution and bylaws of such labor organization do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and hearing, by the members in good standing voting in a secret ballot conducted by the officers of such labor organization in accordance with its constitution and bylaws insofar as they are not inconsistent with the provisions of this subchapter.

Section 481(i) further provides:

The Secretary shall promulgate rules and regulations prescribing minimum standards and procedures for determining the adequacy of the removal procedures to which reference is made in subsection (h) of this section.

Madden contends that the old NABR constitution did not contain adequate procedures for his removal and that the union was therefore required to follow the procedures promulgated by the Secretary of Labor. He argues that since the union did not follow those procedures, the September 1984 election is invalid and the results void.

■ Whatever the merits of Madden's argument, it is clear that this Court is not the appropriate forum to hear it. The United States Supreme Court has held that § 403 of LMRDA, 29 U.S.C. § 483 (1982), makes suit by the Secretary of Labor the exclusive post-election remedy for a violation of § 401. *Trbovich v. UMW*, 404 U.S. 528, 531, 92 S.Ct. 630, 632, 30 L.Ed.2d 686 (1972); *see also Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 104 S.Ct. 2557, 2569–71, 81 L.Ed.2d 457 (1984). Thus, if

Madden wishes to challenge his discharge, his sole recourse is to file a complaint with the Secretary. If after an investigation the Secretary concludes that there is probable cause to believe that the election was a violation of § 401, the Secretary can commence a suit to set it aside. In the meantime, however, I must presume that the election was valid.

■ Madden argues that although § 401 would prohibit him from initiating a private suit to set aside the NABR election, he has an "independent right as an interpleaded defendant" to challenge the validity of the election in the context of this action. Defendant Madden's Memorandum of Law in Opposition to Motion for Summary Judgment at 10 [hereinafter cited as "Madden's Mem."]. However, I cannot discern, and Madden has not identified, the source of this alleged "independent right." Congress and the Supreme Court have made clear that all post-election challenges to union elections are to be made to the Secretary of Labor. No exception has been made for interpleader actions; indeed, if anything, an interpleader suit seems an even less appropriate context in which to decide the validity of a union election than a private suit brought expressly for that purpose. Accordingly, I find little merit in Madden's argument that I should entertain his challenge to the NABR's September 1984 election.

■ Finally, I note that Madden maintains "upon information and belief" that the moving defendants will dissipate the union's funds if I grant their motion for summary judgment. He contends that this might "cause the demise of [the] NABR as well as ... untold future inconvenience to the referees." Madden's Mem. at 12. While I appreciate Madden's concern for the well-being of the union, his unsupported assertions are no basis for denying the moving defendants' application for summary judgment. As with all union funds, the NABR's leaders will have a fiduciary duty not to waste or misuse the check-off dues monies. If they breach that

duty, the union membership can of course sue them for relief.

For all of these reasons, I conclude that the moving defendants are entitled to summary judgment. Unfortunately, that does not entirely dispose of this matter. The NBA has moved for an award of $19,167.64 in costs and attorney's fees to compensate it for the expense of commencing and maintaining this interpleader action. Both Madden and the moving defendants have opposed the NBA's request as excessive. Accordingly, the NBA's motion for costs and attorney's fees is referred to Magistrate Ruth V. Washington for a report and recommendation.

In the meantime, the Clerk of the Court is directed to enter judgment in favor of defendants Michael F. Mathis, Wally Rooney, William Saar, and Jim Capers. The Clerk is further directed to pay to Richard Bavetta, in his capacity as Treasurer of the National Association of Basketball Referees, all but $20,000 of the funds currently held in the Registry of the Court. That sum, and any interest that may accrue on it, is to remain in the Registry pending determination of plaintiff's motion for costs and attorney's fees.

The NBA is hereby discharged from any further liability as to any check-off monies due under the December 8, 1983 collective bargaining agreement. Defendants, their agents, attorneys and assigns are hereby enjoined from instituting or prosecuting any proceedings against the NBA with respect to the subject matter of this action in any state or federal court, or instituting any proceeding for recovery of, or relating to, check-off monies payable under the December 8, 1983 agreement.

SO ORDERED.