Herman E. McMAHAN, Plaintiff,

v.

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS UNION LOCAL 601, South Carolina National Bank and George P. Simmons, Jr., Defendants.

Civ. A. No. 2:89–1185–18.

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 11, 1991.

A. Elliott Barrow, Jr., Charleston, S.C., for plaintiff.

Terry Ann Rickson, Charleston, S.C., Victor J. Van Bourg, Sandra Rae Benson, San Francisco, Cal., for defendants.

## ORDER

NORTON, District Judge.

This matter is before the court for review of the magistrate judge's report and recommendation in which the Magistrate Judge recommended that defendants' motion for summary judgment be granted.

Plaintiff Herman E. McMahan filed the above-captioned action on May 9, 1989, seeking reimbursement for salary pursuant to section 504(d) of the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. section 504. On February 23, 1990, defendants filed a motion for summary judgment, claiming first, that section 504(d) violates the Fifth Amendment of the United States Constitution; second, that plaintiff lacks standing to bring this action; and third, that this action is barred by the applicable statute of limitations. Additionally, defendants claim that the International Association and George P. Simmons are entitled to summary judgment because they do not come within the wording of the statute in question.[1]

The motion for summary judgment was referred to the magistrate judge for a hearing and recommendation pursuant to 28 U.S.C. section 636(b)(1)(B), and on October 23, 1990, the magistrate judge issued his report and recommendation in accordance with section 636(b)(1)(C). The magistrate judge concluded that plaintiff lacks standing to bring this action and that defendant International Association does not come within the wording of the statute in question, and therefore recommended that summary judgment be granted in favor of defendants.

Section 636(b)(1) requires that this court make a *de novo* determination of those portions of the report or specified recommendations to which objection is made, and the court may accept, reject or modify, in whole or in part, the recommendations made by the magistrate judge. On November 8, 1990, plaintiff filed objections to the report and recommendation and this court accordingly conducted a *de novo* review of the pertinent portions of the report and recommendation.

Having conducted a *de novo* review, this court agrees with the magistrate judge's report and recommendation and it therefore adopts the report and recommendation. It is, therefore,

ORDERED that summary judgment be granted in favor of defendants and that this case be dismissed.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

CARR, United States Magistrate Judge.

This matter is before the undersigned United States Magistrate for a report with recommendations regarding the motion for summary judgment filed by defendants, International Association of Bridge, Structural and Ornamental Iron Workers (hereinafter the "International Union"), and Iron Workers Local Union No. 601 (hereinafter "Local 601"), pursuant to Title 28, United States Code, § 636(b)(1)(B).[1]

Plaintiff, Herman McMahan, brought this action seeking reimbursement for salary, pursuant to § 504(d) of the Labor–Management Report and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 504. Plaintiff McMahan was the elected business manager of Local 601 in Charleston, South Carolina. McMahan was convicted of various federal criminal offenses as set forth *infra*, which conviction was ultimately reversed. By way of this action, he seeks reimbursement for salary allegedly due him while his criminal conviction was on

---

1. Defendant George Simmons is now deceased and his motion for summary judgment is therefore moot. Plaintiff has entered a voluntary dismissal as to Mr. Simmons.

1. The motion for summary judgment was also officially filed on behalf of defendant George P. Simmons, Jr. However, defendant Simmons' motion for summary judgment is moot in that he is now deceased, and the plaintiff has entered a voluntary dismissal as to Simmons.

appeal and during a time when he was incarcerated in a federal prison.

The facts giving rise to this case are authoritatively set forth by the Fourth Circuit Court of Appeals in *U.S. v. Price & McMahan*, 788 F.2d 234 (4th Cir.1986).

In February of 1982, the F.B.I. began to investigate the membership application process at Local 601. As a result of that investigation, a Federal Grand Jury returned an indictment against plaintiff McMahan and others. In addition to alleging embezzlement and conspiracy counts, the indictment alleged that McMahan was engaged in a "scheme or artifice to defraud the union and its members of their rights to McMahan's ... faithful and disinterested performance of official duties, free from corruption, partiality, dishonesty and fraud" in violation of 18 U.S.C. § 1341 (mail fraud). *Id.* at 235.

A jury trial was held before the Honorable C. Weston Houck, United States District Judge, in 1984. The jury returned a verdict of "guilty" against McMahan on 23 counts. McMahan filed an appeal from that jury verdict. *Id.* at 236.

The Fourth Circuit reversed the embezzlement conviction, finding that membership application forms themselves were not taken or converted. With respect to the mail fraud convictions, the Fourth Circuit upheld those convictions on the ground that denial of an intangible right such as honest union management by use of the mails constituted mail fraud. *Id.* at 237.

Subsequent to the Fourth Circuit decision in the underlying case, the Supreme Court decided the case of *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In *McNally*, the Court held that the mail fraud statute does not extend to the protection of "intangible rights" such as good government or honest union management. Thus, in light of *McNally*, the Supreme Court set aside McMahan's conviction. The Fourth Circuit remanded the case to the District Court to reverse the convictions and to dismiss the

indictment as it related to the mail fraud charges. The Fourth Circuit directed that the government could seek another indictment against McMahan for defrauding the union of money or property. *Id.* 236–37. The prosecutor, however, chose not to seek another indictment against McMahan. Thus, on October 19, 1988, the indictment was dismissed.

Section 504 of the LMRDA (29 U.S.C. § 504) (contains a "disbarment" provisions which prohibits persons convicted of certain enumerated offenses from holding office or employment in a labor organization for a period of 13 years. (§ 504(a)).[2] In addition, the statute provides that any person who permits such a person to hold union office or union employment shall be criminally liable, and shall be fined "not more than $10,000 or imprisoned for not more than 5 years, or both." (§ 504(b)). Thus, by virtue of § 504 and McMahan's incarceration in a federal prison, McMahan was no longer permitted to serve as the business manager of Local 601. The Local Union and the International were advised of this fact by the Department of Justice by a letter dated January 30, 1985.

Section 504(b) requires that when a person disabled from holding union office or union employment appeals from his conviction, the organization responsible for payment of his salary must place that salary in an escrow account, and payment of that salary into the escrow account shall continue for the duration of the appeal "or for the period of time during which such salary would be otherwise due, whichever period is shorter." If the person's conviction on final appeal is reversed, the amounts in the escrow account shall be paid to the individual. If the person's conviction on final appeal is sustained, the amounts in the escrow account shall be returned to the labor organization. (§ 504(d)).

On March 29, 1985, McMahan, acting through counsel, requested that Local 601, pursuant to § 504(d), deposit salary allegedly due him into an escrow account which

**2.** This period of disbarment applies regardless of whether the judgment of conviction remains under appeal.

he had established. For a time, the local union complied with this request. However, despite the fact that McMahan's conviction was still on appeal, and in violation of law, and the specific prohibitions of § 504, plaintiff McMahan withdrew sums of money from that escrow account: specifically, McMahan withdrew $3,000 on November 4, 1985, $1,000 on November 6, 1986, $3,000 on April 21, 1986 and $2,500 on June 17, 1986.[3]

On December 19, 1988, McMahan, through counsel, demanded payment of the amount of $109,365.69 from Local 601 pursuant to the provisions of § 504(d). On December 28, 1988, Local 601, through counsel, denied McMahan's request based on, *inter alia,* the unconstitutionality of § 504(d) and the impropriety of McMahan's unlawful actions in taking for his own use monies from the earlier established bank account. In addition, the Union demanded that McMahan return all monies withdrawn by him between the date of his conviction and the present time. Despite this demand, McMahan failed and refused to return such monies to the local union. Moreover, the International Trustee discovered that after his conviction, McMahan signed a purchase agreement for an automobile which he placed in his name and which he purchased with Local 601 funds. On May 9, 1989, McMahan filed the instant action seeking payment of salary allegedly due him.

Defendants brought the instant motion for summary judgment on the following grounds:

(1) Section 504(d) represents an unconstitutional taking of private property without just compensation in violation of the fifth amendment to the United States Constitution;

(2) Section 504(d) represents an unconstitutional taking of private property without due process of law in violation of the fifth amendment to the United States Constitution;

(3) Plaintiff lacks standing to bring this action;

(4) The instant case is barred by the applicable statute of limitations, and

(5) Defendants International Association and George P. Simmons (deceased) are entitled to summary judgment because they do not come within the statute in question.

### THE SUMMARY JUDGMENT STANDARD

Summary judgment is granted only when there exists no genuine issue of material fact. The standard for granting summary judgment has been said to mirror the standard for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see also, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As stated in *Anderson,* 477 U.S. 242, 106 S.Ct. 2505:

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine whether there is a genuine issue for trial. As *Adickes [v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)] and [*First National Bank of Arizona v.*] *Cities Service,* [391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)], indicate, there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Cities Service,* 391 U.S. at 288–289 [88 S.Ct. at 1592–1593]. ... If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) *per curiam* ), or is not significantly probative, *Cities Service, supra* [391 U.S.], at 290 [88 S.Ct. at 1593] ..., summary judgment may be granted."

---

**3.** When the local union became aware of this fact, the balance of the escrow account remaining after McMahan had unlawfully withdrawn the $9,500 was withdrawn from the account and applied as partial payment to Local 601's indebtedness to the International Association for unpaid per capita taxes.

*Anderson,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511.

In the instant case, the defendants submitted the declarations of the General Secretary of the International Union and the Trustee of Local 601, both sworn to under penalty of perjury, in support of the motion for summary judgment. The plaintiff, on the other hand, submitted no counter affidavits or declarations. As the Supreme Court noted in *Celotex Corp., supra,* although the moving party bears the burden of demonstrating no triable issue of fact in a summary judgment motion, the plaintiff always bears the ultimate burden in the case and may not oppose summary judgment on the basis of "the mere pleadings themselves." As the Court noted:

> "Such a motion [summary judgment], whether or not accompanied by affidavits, requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate the specific facts showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

In this case, plaintiff did nothing more than rely on "the mere pleadings themselves" in opposing the motion for summary judgment.[4]

### DISCUSSION

This is a case of first impression since there appear to be no reported cases dealing with a claim on an escrow account required by § 504(d). A challenge to the constitutionality of § 504(d) was raised in *Local 186, International Brotherhood of Teamsters v. Brock,* 812 F.2d 1235 (9th Cir.1987), however, the Ninth Circuit did not decide the constitutional question finding, rather, that the issue was not ripe for adjudication. Since it appears that the de-

fendants' arguments concerning standing, and the International Union's status under the statute are meritorious and dispositive, the constitutional question and the statute of limitations question need not be reached.

### STANDING

■ When Congress enacted the LMRDA, 29 U.S.C. § 401 *et seq.,* it did not provide standing either exclusively to the Secretary of Labor, or exclusively to individual members, or to a combination of both to enforce the entire statute. Rather, Congress was explicit in defining who would have standing to enforce the various sections of the LMRDA.

For example, in § 102 of the LMRDA (29 U.S.C. § 412) Congress provided a civil cause of action to "any person" whose rights are secured by the provisions of Subchapter II of the LMRDA. Subchapter II is not at issue in this case.

Likewise, Congress provided a civil cause of action exclusively for the Secretary of Labor, including the right to seek injunctive relief, whenever it appears to the Secretary that any person "has violated or is about to violate any provisions of Subchapter III" of the LMRDA. (*See* 29 U.S.C. § 440). Subchapter III is not at issue in this case.

For a violation of Subchapter IV, Congress provided a civil cause of action for either the Secretary of Labor or any member of a subordinate body of a labor organization. (*See* 29 U.S.C. § 464(a)). Subchapter IV is not at issue in this case.

This action was brought to enforce the provisions of § 504(d) which is a part of Subchapter VI of the LMRDA. With respect to Section 501(a) of Subchapter VI (29 U.S.C. § 501(a)), Congress provided a civil cause of action for a "member" to sue *on behalf of the labor organization* to recov-

---

**4.** In a memorandum opposing the summary judgment, plaintiff alleged that he was actually seeking damages for a breach of contract rather than seeking reinforcement of § 504(d). Plaintiff's counsel, however, at the hearing retracted that statement with respect to enforcement of § 504(d). Moreover, plaintiff did not identify the alleged contract, nor is the alleged contract or the breach thereof mentioned in the com-

plaint. Therefore, plaintiff failed to establish a genuine issue of fact with respect to the existence of the alleged contract and/or the breach thereof. More important, plaintiff failed to establish how, if this action actually dealt solely with a state-created breach of contract claim, this court, being a court of limited jurisdiction, would have jurisdiction to entertain such a claim.

er damages or secure an accounting or other appropriate relief *for the benefit of the labor organization.* (*See* 29 U.S.C. § 501(b)). However, even this grant of jurisdiction is limited by the requirement that the member must seek and obtain court permission upon a verified application and for good cause shown prior to bringing the proceeding. (*Id.*) That grant of jurisdiction is, again, limited to an alleged violation of § 501(a). Section 501(a) is not involved in this case.

There is no section which creates jurisdiction specifically to enforce Section 504. However, there is a general grant of jurisdiction *exclusively* to the Secretary of Labor to investigate *all violations* of the LMRDA (except Subchapter II) and confers upon the Secretary the powers provided by § 48 and § 50 of Title 15 for subpoenas, enforcement and contempt. (*See* 29 U.S.C. § 521). Since § 504(d) is a portion of the LMRDA, and is not a portion of Subchapter II, this general grant of jurisdiction to the Secretary of Labor in 29 U.S.C. § 521 would cover the violation alleged here. Section 521's conferring of jurisdiction is, however, *exclusively* to the Secretary of Labor, and is not to an individual.

Nowhere in the statute did Congress confer standing upon an individual to enforce the provisions of § 504(d). Congress did, however, vest in the Secretary of Labor the power, including all of the powers provided by 15 U.S.C. §§ 49 and 50, to investigate all violations of the statute except Subchapter II.

In this case, plaintiff never filed a complaint with the Secretary of Labor nor sought the Secretary of Labor's intervention in enforcing § 504(d) against the defendants. Thus, plaintiff failed to exhaust administrative remedies available to him under the statute and, therefore, this action is barred. *See, e.g., Molina v. Union De Trabajadores De Muelles Y Ramas Anexas Local 1740,* 762 F.2d 166 (1st Cir. 1985) (federal court jurisdiction lacking over complaint of unsuccessful candidate for presidency of union where plaintiff failed to enlist the participation of the Secretary of Labor in a timely manner) and

*National Basketball Assn. v. National Assn. of Basketball Referees,* 620 F.Supp. 672 (D.C.N.Y.1985) (federal district court was not the appropriate forum to hear complaint concerning discharge of labor union executive whose sole recourse was to file a complaint with the Secretary of Labor).

■ Plaintiff acknowledged that from the face of the statute, he does not have standing to enforce § 504(d). However, he argued that he has an "implied right" to enforce the statute, but a review of the law relied upon by plaintiff does not support this argument. In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court set forth a four part test to determine whether an implied right of action exists under a federal statute. The first factor deals with whether the plaintiff is in the class for whose especial benefit the statute was enacted. The Courts have found no difficulty in discerning the purpose of § 504 as a whole, and have overwhelmingly stated that the statute was enacted to protect the members of unions from corrupt union officials, not to protect union officials themselves. In *Harmon v. Teamsters, Chauffeurs & Helpers, Local 371,* 832 F.2d 976, 979 (7th Cir.1987), the court described the purpose of § 504 as follows:

> "But § 504 does not have the appearance of a hard-fought compromise.... The relevant purpose seems obvious, and valid concerns about the general difficulty of discerning the purpose of a heterogeneous body such as the Congress of the United States must not be allowed to blind us to the obvious. Congress thought that persons who commit serious crimes should not be permitted to hold union office until a healthy period of time had elapsed after their punishment."

The First Circuit likewise noted the purpose of § 504 as follows:

> "Congress wanted to disqualify from union office persons convicted of 'serious' crimes, [citations]; it intended to create 'strong barriers against the control of unions by unreformed convicted thieves, racketeers and thugs,' (citations)."

*United Union of Roofers etc. No. 33 v. Meese,* 823 F.2d 652 (1st Cir.1987).

*See also, Local 186, International Brotherhood of Teamsters v. Brock,* 812 F.2d 1235, 1238 n. 4 (9th Cir.1987) ("[D]isqualification of one who has been convicted of such [enumerated] crimes seems to fit a legitimate legislative goal, curbing corruption in labor affairs.").

In this case, the undisputed facts on summary judgment, and as detailed by the Fourth Circuit, demonstrate that as a result of the scheme entered into by McMahan, "the union and its members were not receiving what they were entitled to, that is the honest and faithful services of [McMahan] in the exercise of [his] official duties." *U.S. v. Price & McMahan,* 788 F.2d at 237. Therefore, McMahan does not meet the first of the *Cort v. Ash* test.

The second factor to consider is whether there is any indication that Congress intended to create or deny a remedy. Here the Congressionally intended remedy under § 504(d), however, as discussed, *supra,* must be enforced by the Secretary of Labor, not by an ex-union official individually, and there is no implication otherwise in the statute or its legislative history.

The third factor to consider is whether a remedy for the plaintiff directly is consistent with the purposes underlying the legislative scheme. As discussed *supra,* the purpose underlying the legislative scheme of § 504 as a whole was to prevent corrupt union officials from holding office and receiving money from the union's treasury at the expense of the union's membership. In this case, where it is undisputed that McMahan actually engaged in the conduct of which he was accused (although it was ultimately found not to have constituted a violation of the mail fraud statute), requiring the union members to now pay McMahan for services he never rendered would not serve the purposes underlying the legislative scheme.

■ The fourth factor to consider is whether the cause of action is one traditionally relegated to state law. Although plaintiff asserted at argument that this action is a breach of contract action tradition-

ally relegated to state law, plaintiff came forward with no evidence to support this theory. Instead, the regulation of labor union conduct and the national labor policy is a matter traditionally of federal law and federal regulation, and the states are prohibited from acting in this area where state action would be inconsistent with the federal labor policy. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Therefore, it would not be inappropriate to infer a cause of action based solely on federal law.

In sum, the balance of the test set forth in *Cort v. Ash,* shows that no right of action can be implied to permit plaintiff to enforce the provisions of § 504(d). That being the case, defendants are entitled to summary judgment on the ground that plaintiff lacks standing to bring this action.

## DEFENDANT INTERNATIONAL UNION IS NOT SUBJECT TO THE STATUTE IN THIS CASE

■ The undisputed facts in this case establish that Local 601 is a wholly autonomous labor organization affiliated with the International Union. The International Union and the Local Union are separate, distinct organizations which file separate LM Report Forms with the Department of Labor and which have separate Employer Identification Numbers. The employees of Local 601, including McMahan, are not, and were not, employees of the International Association.

Section 504(d)'s disbarment requirements run to the "individual employer" or "organization responsible for payment" of the salary in question. In this case, McMahan's employer was Local 601. Therefore, Local 601 is the "organization responsible for payment of such salary." At no time was McMahan an employee of defendant International. Since defendant International Association does not come within the wording of the statute, the International Union is also entitled to summary judgment as a matter of law on that ground.

**1344**

## CONCLUSION

Accordingly, for the reasons stated above, it is recommended that the summary judgment motion of the defendants, International Association of Bridge, Structural and Ornamental Iron Workers, and Ornamental Iron Workers Union Local 601, be granted.

Charleston, South Carolina

October 23, 1990